UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BAUER FAMILY ENTERPRISES, INC.,

      Plaintiff,

v.                               Case No. 3:20-cv-500-J-34MCR

OHIO SECURITY INSURANCE COMPANY,

      Defendant.

_____/

### DEFENDANT OHIO SECURITY INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS AND SUPPORTING MEMORANDUM OF LAW

Defendant Ohio Security Insurance Company ("Ohio Security"), by and through its undersigned counsel, moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and states:

## I.

### SUMMARY

There is no coverage for the alleged loss of Plaintiff Bauer Family Enterprises, Inc. ("Bauer") under its insurance policy. Bauer pleads no facts to support a claim that it sustained direct physical loss of or damage to covered property—business personal property—caused by a covered cause of loss. Instead, Bauer alleges an economic loss caused by civil authority orders arising from COVID-19. These orders, however, did not cause any tangible alteration, physical damage, or actual harm to Bauer's covered property. Because no issues of material fact exist on the threshold requirement of direct physical loss or damage, Bauer fails to state a claim for declaratory judgment, the sole count in the amended complaint. This Court should enter a final judgment on the pleadings in favor of Ohio Security.

Even if Bauer could show direct physical loss of or damage to covered property (which it cannot), the policy's virus exclusion bars recovery for the claim. The cause of any direct physical loss or damage is the Coronavirus. The virus exclusion applies to all coverage under all forms and endorsements in the policy, including the forms or endorsements that cover business income, extra expense or action of civil authority. The policy's consequential losses exclusion and the acts or decisions exclusion also bar coverage for the claim.

## II.

## FACTS

1.    This case involves an alleged business income loss arising from COVID-19.[1]

2.    Bauer is a business that operates a men's barbershop in Jacksonville.[2]

3.    Ohio Security issued an all-risks property insurance policy ("Policy") to Bauer.[3]

4.    The Policy's Declarations page lists Business Personal Property Coverage.[4]

5.    To trigger coverage, the Policy requires a direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss. Covered Causes of Loss are risks of direct physical loss unless the loss is excluded or limited. The Policy's Businessowners Coverage Form[5] states:

**BUSINESSOWNERS COVERAGE FORM**

*** 

**SECTION I—PROPERTY**

**A.    Coverage**

---

[1] ECF No. 7 at ¶21.
[2] *Id*. at ¶¶11-12, 18.
[3] *Id*. at ¶6, ECF No. 7-1 at pgs. 1-150.
[4] ECF No. 7-1 at pgs. 16 of 150.
[5] ECF No. 7-1 at pgs. 19-20 of 150; ECF No. 16 at pgs. 5-6 of 22.

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1.      **Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property.[6]

\*\*\*

3.      **Covered Causes Of Loss**

Risks of direct physical loss unless the loss is:

a.      Excluded in Paragraph **B.** Exclusions in Section **I;** or

b.      Limited in Paragraph **4.** Limitations in Section **I.**

\*\*\*

6.      The Policy provides Business Income, Extra Expense, and Civil Authority Coverage, subject to specific threshold requirements to trigger coverage. Coverage for Business Income, Extra Expense, and Civil Authority are additional coverages under the Policy's Businessowners Coverage Form. The Policy states:

5.      **Additional Coverages**

\*\*\*

f.      **Business Income**

(1)    **Business Income**

(a)    We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must

---

[6] A Limit of Insurance is shown in the Declarations for Business Personal Property Coverage. ECF No. 7-1 at pgs. 16 of 150.

be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of loss.[7]

\*\*\*

g.    **Extra Expense**

(1)    We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.[8]

\*\*\*

i.    **Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.[9]

\*\*\*

7.    The Policy bars coverage for loss or damage caused by or resulting from consequential losses. Consequential losses include loss or damage caused by or resulting from delay, loss of use or loss of market. The Policy's Consequential Losses exclusion states:

B.    **Exclusions**

\*\*\*

2.    We will not pay for loss or damage caused by or resulting from any of the following:

---

[7] ECF No. 7-1 at pgs. 21, 24 of 150; ECF No. 16 at pgs. 9-11 of 22.
[8] ECF No. 7-1 at pgs. 25-26 of 150; ECF No. 16 at pgs. 11-14 of 22.
[9] ECF No. 7-1 at pgs. 26-27 of 150; ECF No. 16 at pgs. 14-18 of 22.

\*\*\*

**b.**     **Consequential Losses**

Delay, loss of use or loss of market.[10]

\*\*\*

8.     The Policy bars coverage for damages caused by or resulting from acts or decisions of any person or governmental body. The Policy's Acts Or Decisions exclusion states:

**B.**     **Exclusions**

\*\*\*

**3.**     We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*\*\*

**b.**     **Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.[11]

\*\*\*

9.     The Policy bars coverage for loss or damage caused by or resulting from any virus. The Policy's Exclusion Of Loss Due To Virus Or Bacteria endorsement adds virus as an excluded cause of loss. The endorsement specifically provides that the virus exclusion applies to all coverage under Section I—Property in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph C, and includes but is not limited to

---

[10] ECF No. 7-1 at pgs. 35, 37 of 150; ECF No. 16 at pg. 18 of 22.
[11] ECF No. 7-1 at pgs. 35, 39 of 150; ECF No. 16 at pg. 20-21 of 22.

forms or endorsements that cover property damage to buildings or personal property and forms

or endorsements that cover business income, extra expense or action of civil authority. The

Policy's Virus exclusion[12] states:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under **Section I - Property** in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

   **1.** Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

   **2.** Coverage otherwise provided under Food Contamination Endorsement **BP 04 31** (if that endorsement is attached to this Businessowners Policy); or

   **3.** Coverage otherwise provided under the Food Contamination Additional Coverage in Restaurants Endorsement **BP 07 78** (if that endorsement is attached to this Businessowners Policy).

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Businessowners Policy are hereby amended to remove reference to bacteria:

   **1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

   **2.** Additional Coverage - Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

***

10. Bauer claims it "has suffered and continues to suffer business income loss."[13]

11. On April 1, 2020, Governor Ron DeSantis issued Executive Order 20-91.[14]

12. Bauer pleads that the Order in part limits all people's movement ("Safer At

Home") in Florida to essential activities and excludes non-essential businesses from operating if

---

[12] ECF No. 7-1 at pg. 88 of 150; ECF No. 16 at pg. 8 of 22.
[13] ECF No. 7 at ¶21.
[14] *Id*. at ¶16; ECF No. 7-2 at pgs. 1-5 of 34.

unable to maintain social distancing.[15]

13.    The Order states: "[O]n March 1, 2020, the State Surgeon General and State Health Officer declared a Public Health Emergency exists in the State of Florida as a result of COVID-19" and "on March 9, 2020, [Governor DeSantis] issued Executive Order 20-52 declaring a state of emergency for the entire State of Florida as a result of COVID-19."[16]

14.    The Order states further that "it is necessary and appropriate to take action to ensure that the spread of COVID-19 is slowed, and that residents and visitors in Florida remain safe and secure."[17]

15.    "In concert with the efforts of President Trump and the White House Coronavirus Task Force to fight COVID-19, and based on guidance provided by Florida Surgeon General and State Health Officer, Dr. Scott Rivkees, all persons in Florida shall limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities."[18]

16.    The Order states that "essential services" means and encompasses the list detailed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, v. 2 (March 28, 2020) and any subsequent lists published.[19] Essential services also include those businesses and activities designated by Executive Order 20-89 and its attachment which consists of a list propounded by Miami-Dade County in multiple orders.[20]

17.    The U.S. Department of Homeland Security memorandum discussed in the Order issued by Governor DeSantis provides an advisory list for "Essential Critical Infrastructure

---

[15] *Id*. at ¶17.
[16] ECF No. 7-2, pg. 1 of 34 at WHEREAS ¶¶2-3.
[17] *Id*. at pg. 2 of 34 at WHEREAS ¶8.
[18] *Id*. at pg. 3 of 34, Section 1.B., Safer At Home.
[19] *Id*. at Section 2.A.
[20] *Id*. at Section 2.B.

Workforce" based on President Trump's updated Coronavirus Guidance for America "to slow the spread of COVID-19."[21]

18.     The list of essential critical infrastructure workers during the COVID-19 response was an advisory list. It is not a federal directive or standard.[22]

19.     Barbershops are not identified as essential businesses in the memorandum,[23] Executive Order 20-89[24] issued by Governor DeSantis, or Miami-Dade County orders.[25]

20.     Executive Order 20-91 states: "This Order is effective 12:01 am on April 3, 2020. This Order shall expire on April 30, 2020 unless extended by subsequent order."[26]

21.     Bauer immediately complied with the Order and continues to comply with the Order and any extensions thereof.[27]

22.     Bauer alleges that the nature and/or effect of the Order also requires it to plan, pay and make changes to the location.[28]

23.     Bauer pleads: "Recognizing a new reality, BUSINESS will have to adapt and take action to past, present and/future Orders, rules, regulations and/or statutes, (whether or not the LOCATION is actually comprised) (sic), in order to offer men's barbershop services."[29]

24.     Bauer further pleads: For Ohio Security "to deny the new reality that the effect of past, present and/or future Orders, rules, regulations and/or statutes, (whether or not the LOCATION was, is or maybe comprised) (sic), does not cause physical loss and damage, would

---

[21] *Id*. at pg. 6 of 34.
[22] *Id*.
[23] *Id*. at pgs. 9-20 of 34.
[24] *Id*. at pgs. 21-23 of 34.
[25] *Id*. at pgs. 24-34 of 34.
[26] *Id*. at pg. 5 of 34 at Section 6.
[27] ECF No. 7 at ¶¶19-20.
[28] *Id*. at ¶22.
[29] *Id*. at ¶27.

constitute a false and potentially fraudulent misrepresentation that could endanger policyholders and the public."[30]

25.     "Upon suffering business income loss," Bauer reported a claim to Ohio Security and requested that any and all benefits owed under the Policy be paid.[31]

26.     Ohio Security denied the claim.[32]

27.     Bauer contends the Policy provides loss of Business Income and Extra Expense coverage, and coverage for Civil Authority action.[33]

28.     Bauer claims Ohio Security accepted premiums with no intention of providing any coverage due to direct physical loss resulting for Civil Authority action.[34]

29.     Bauer alleges that it is presently in genuine doubt and uncertain as to its rights, status, and privileges under the Policy, specifically, its rights, status and privileges and Ohio Security's obligations to provide coverage for the losses stemming from the Order.[35]

30.     Bauer pleads that it has a bona fide, actual and present need for a declaration and construction of the Policy, its status, rights, and privileges, and Ohio Security's obligation to provide coverage to Bauer under the Policy, including its primary coverage and all coverage extensions, including the applicable coverage triggers under the Policy.[36]

31.     Bauer asks this Court to declare that the Policy provides coverage for the losses stemming from the Order, and that the virus exclusion "is no (sic) applicable" to the claim.[37]

---

[30] *Id*. at ¶28.
[31] *Id*. at ¶¶23-24.
[32] *Id*. at ¶26.
[33] *Id*. at ¶¶13-14.
[34] *Id*. at ¶15.
[35] *Id*. at ¶31.
[36] *Id*. at ¶32.
[37] *Id*. at Wherefore clause, ¶34a. and ¶34.b.

## III.

## ARGUMENT

**A.      Standard for Judgment on the Pleadings**

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "After the pleadings are closed—but early enough not to delay trial—a party may move for a judgment on the pleadings." Fed.R.Civ.P. 12(c).

For purposes of a motion for judgment on the pleadings, this Court must accept all the facts in the Amended Complaint as true and view them in the light most favorable to Bauer. *See Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014). Ohio Security's motion is governed by the same standard as a motion to dismiss for failure to state a claim on which relief may be granted. *See Black v. Kerzner Int'l Holdings Ltd.*, 958 F.Supp.2d 1347, 1349 (S.D.Fla. 2013). This Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the Amended Complaint; it also must meet the threshold inquiry of facial plausibility. *See Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A motion for judgment on the pleadings should only be granted when there are no facts a party can prove to support a claim for relief. *See Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002).

**B.      Coverage for Bauer's claim does not meet the insuring agreements under the Policy because a covered cause of loss did not cause direct physical loss of or damage to business personal property.**

There is no coverage for the claim under the Policy because Bauer pleads no facts to support that a covered cause of loss caused direct physical loss of or damage to its business personal property. Bauer bears the burden of proving direct physical loss of or damage to

covered property caused by a covered cause of loss as a prerequisite to coverage under this Policy. *See U.S. Liab. Ins. Co. v. Bove*, 347 So.2d 678, 680 (Fla. 3d DCA 1977). Bauer has not alleged sufficient facts to meet this burden of proof.

This Policy's insuring agreement requires a "direct physical loss of or damage to" covered property caused by or resulting from a covered cause of loss. The words "direct" and "physical" modify loss and impose the requirement that the damage be actual. *See Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So.3d 1067, 1069 (Fla. 3d DCA 2017); *Vazquez v. Citizens Prop. Ins. Corp.*, 2020 WL 1950831 at *3 (Fla. 3d DCA 2020); *see also, Mama Jo's v. Sparta Ins. Co.*, 2020 WL 4782369 at *8 (11th Cir., Aug. 18, 2020). A direct physical loss of or damage to covered property contemplates an actual change in the insured property, then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so. *See Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974 at *9 (S.D.Fla., June 11, 2018); *see also, AFLAC Inc. v. Chubb & Sons*, Inc., 581 S.E.2d 317, 319 (Ga.App. 2003).

"[T]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *See Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581 at *5 (S.D.Fla., Aug. 26, 2020) (citing 10A Couch On Insurance § 148.46 (3d Ed. 2019)).[38]

---

[38] *See also, Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 5258484 (E.D. Mich., Sept. 3, 2020) (plaintiff in COVID-19 claim failed to show tangible damage to covered property); *Great Northern Ins. Co. v. Benjamin Franklin Federal Sav. And Loan Ass'n*, 793 F.Supp. 259, 263 (D.Or. 1990) (no physical loss and inclusion of the terms "direct" and "physical" could only have been intended to exclude indirect, nonphysical losses); *Hartford Ins.*

Moreover, "[a]n insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." *10E, LLC v. Travelers Indemnity Co. of Connecticut*, 2020 WL 5359653 at *5 (C.D. Cal., Sept. 2, 2020). An insured's alleged economic damage is not synonymous with "physical loss." *See Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 2020 WL 5791583 at *3 (M.D. Fla., Sept. 28, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 at *5 (W.D.Tex., Aug. 13, 2020) (plaintiffs failed to plead a direct physical loss); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465 at *3 (N.D.Ill., Sept. 21, 2020) (no coverage for financial losses as a result of closure orders and plaintiff failed to plead a direct physical loss); *Rose's 1, LLC v. Erie Ins. Exchange*, 2020 WL 4589206 (D.C.Super., Aug. 6, 2020) (civil authority order issued by mayor did not cause a "direct physical loss").

Here, Bauer's claimed loss does not fall within the coverages provided by the Policy. Bauer's business personal property is the covered property. But Bauer has not alleged any facts supporting direct physical loss of or damage to its business personal property caused by a covered cause of loss. *See Malaube* at *7 (discussing the difference between allegations that COVID-19 was physically present in viral fluid particles on the premises versus the absence of any allegations of physical harm to covered property). Bauer has not alleged any facts to support that COVID-19 particles attached to the business personal property inside the building to cause

---

*Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (following the "distinct, demonstrable physical alteration of the property" approach when determining if coverage was triggered for "money" loss); *J.O. Emmerich & Associates, Inc. v. State Auto. Ins. Cos.*, 2007 WL 9775576 at *3-5 (S.D.Miss., Nov. 19, 2007) (no "direct physical loss of or damage to" covered property where insured was merely denied access to data during a power outage); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 2 (N.Y. App. Div. 2002) (loss of access to theater did not constitute "direct physical loss"); *Universal Image Productions, Inc. v. Federal Ins. Co.*, 475 Fed.Appx. 569, 574-75 (6th Cir., April 10, 2012) (mold and bacteria contamination was not "direct physical loss or damage").

property damage to them.

Bauer pleads a purely economic loss caused by the Order. Bauer has a genuine doubt and is uncertain as to Ohio Security's "obligations to provide coverage for the losses stemming from the Order."[39] Bauer asks this Court to declare that the Policy "provides coverage for the losses stemming from the Order."[40] Bauer claims that past, present and/or future Orders trigger coverage under the Policy in the absence of physical loss and damage.[41] This Court should reject that claim. Bauer fails to plead that its covered property sustained any loss or damage that is tangible, actual, or physical. Courts in Florida have reached this conclusion in cases seeking coverage for Orders issued as a result of COVID-19. *See Malaube* at *8 (complaint alleged "merely [] economic losses–not anything tangible, actual, or physical"); *Infinity Exhibits* at *3 (rejecting insured's argument that economic damage is physical loss "because Florida law and the plain language of the Policies reflect that actual, concrete damage is necessary"); *Diesel Barbershop* at *6 (plaintiffs pleaded that COVID-19 was in fact the reason for the orders being issued and the underlying cause of the alleged losses). An economic loss caused by the Order, alone, without any actual damage does not satisfy the threshold requirement of pleading facts that support "direct physical loss of or damage to" covered property caused by a covered cause of loss.

Bauer fails to state a plausible claim for coverage under the Policy. No issues of material fact exist on the threshold coverage requirement of direct physical loss of or damage to covered property. The Business Personal Property listed on the Policy has not suffered any actual damage from a covered cause of loss. There is no coverage for Bauer's alleged economic loss caused by

---

[39] ECF No. 7 at ¶31.
[40] *Id*. at ¶34.a.
[41] *Id*. at ¶¶27-28.

the Order.

**C.    Business Income and Extra Expense Coverage also requires direct physical loss or damage to covered property.**

There is no Business Income and Extra Expense Coverage under the Policy because a covered cause of loss did not cause any direct physical loss or damage to covered property. Under both coverages, Bauer must allege facts to support the existence of actual, physical damage to business personal property—the covered property under this Policy. Bauer's failure to allege direct physical loss of or damage to covered property is fatal to its claims for Business Income and Extra Expense Coverage.

Bauer has the burden to prove entitlement to Business Income Coverage under the Policy. This means Bauer must plead facts to support that there was direct physical loss or damage to covered property. *See Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974 at *10 (S.D.Fla., June 11, 2018) (quoting *Dictiomatic, Inc. v. U.S. Fid. & Guar. Co.*, 958 F.Supp. 594, 602-603 (S.D.Fla. 1997). A "suspension" of "operations" must be caused by direct physical loss of or damage to property described in the Declarations. *See Mama Jo's Inc. v. Sparta Ins. Co.*, 2020 WL 4782369 at *9 (11th Cir., Aug. 18, 2020).

The Policy's Business Income and Extra Expense Coverage provisions are clear and unambiguous. Each requires physical loss of or damage to covered property as a prerequisite to any potential for coverage. For there to be coverage for Business Income, the Policy requires a suspension of the insured's operations caused by direct physical loss of or damage to property at the described premises, and the loss or damage must be caused by or result from a covered cause of loss. ECF No. 16 at pg. 10 of 22. As to Extra Expense, the Policy provides coverage for "necessary Extra Expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property at the described

14

premises." ECF No. 16 at pg. 12 of 22.

Courts addressing this issue confirm the express terms of the Policy, requiring the existence of physical damage to covered property as a precondition to the existence of Business Income Coverage. *See United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F.Supp.2d 343 (S.D.N.Y. 2005) (physical damage to insured's property was required to trigger business interruption coverage); *Philadelphia Parking Authority v. Federal Ins. Co.*, 385 F.Supp.2d 280 (S.D.N.Y. 2005) (economic damage was outside policy's business income provision); *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F.Supp.3d 323 (S.D.N.Y. 2014) (holding that policy required some form of actual, physical damage).

Here, Bauer pleads no facts supporting a direct physical loss of or damage to business personal property caused by a covered cause of loss, which required the necessary suspension of its operations. The Policy's Business Income and Extra Expense coverages do not cover a loss of use claim based on purely economic reasons. *See Malaube* at *9. Bauer's loss of use claim cannot survive because it is not based on any direct physical loss or damage to covered property. The claim for Business Income and Extra Expense Coverage fails as a matter of law in the absence of any factual allegations supporting direct physical loss or damage to covered property.

**D.    The claim does not trigger Civil Authority Coverage.**

Bauer pleads no facts to support a claim for Civil Authority Coverage under the Policy. For there to be any potential for coverage, Bauer must plead facts that it sustained an actual loss of Business Income and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

Bauer's factual allegations do not meet these requirements. The Amended Complaint

contains no allegations that action of civil authority prohibited access to the described premises due to direct physical loss of or damage to other property caused by or resulting from a covered cause of loss. *See Infinity Exhibits* at *1 (dismissal with prejudice entered where plaintiff did not plead any facts supporting that a covered cause of loss caused damage to other property in the surrounding area). Moreover, Bauer fails to plead facts supporting a causal link between prior property damage and the Order. *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Amer.*, 2020 WL 5525171 at *7 (N.D.Cal., Sept. 14, 2020).

The Order does not trigger Civil Authority Coverage under the Policy. The Order was not issued by Governor DeSantis in response to direct physical loss of or damage to property other than the property at the described premises. *See e.g., Syufy Enterprises v. Home Ins. Co. of Indiana*, 1995 WL 129229 at *2 (N.D.Cal., Mar. 21, 1995) (curfew orders did not prohibit access to theaters because of damage to adjacent property); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (affirming coverage denial where decision to halt airport operations "was based on fears of future attacks" rather than prior physical damage to adjacent property). The goal of the Order was "to ensure that the spread of COVID-19 is slowed."[42] The Order temporarily limited services and activities to non-essential ones in order to protect against the spread of COVID-19 from person to person. But the Order did not prohibit access to the described premises. No one ever prohibited Bauer's access to the property. Because the Order does not prohibit access to the described premises, and was not issued as a result of any direct physical loss of or damage to property other than the property at the described premises, it cannot be used to invoke coverage under the Policy. *See Pappy's Barber Shops, Inc. v. Farmers*

---

[42] ECF No. 7-2 at pg. 2 of 34 at WHEREAS ¶8.

*Group, Inc.*, 2020 WL 5500221 at *6 (S.D.Cal., Sept. 11, 2020) (no civil authority coverage because government orders did not prohibit access to plaintiffs' place of business and were not issued due to direct physical loss of or damage to property other than at plaintiffs' premises); *Philadelphia Parking Authority* at 289 (FAA order did not prohibit access to garages).

####        E.        The Policy's Virus exclusion bars coverage for the claim.

Even if Bauer alleged sufficient facts to satisfy the requirements of any of the Coverages identified in the Amended Complaint (which it cannot), the Policy's Virus exclusion bars coverage for this claim. The exclusion states: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." The Virus exclusion "applies to all coverage under Section I—Property in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph C.[43] The endorsement explicitly states that this includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority." ECF No. 16 at pg. 8 of 22.

There is no disputed issue of material fact as to what Bauer contends caused its alleged economic losses. Bauer alleges that, on April 1, 2020, while the Policy was in effect, Governor DeSantis issued Executive Order 20-91 (Essential Services and Activities During COVID-19 Emergency).[44] Bauer seeks a declaration that the Policy "provides coverage for the losses stemming from the ORDER."[45]

Courts have applied virus exclusions to bar an insured's recovery for COVID-19 claims.

---

[43] The three exceptions in Paragraph C do not apply to this claim.
[44] ECF No. 7 at ¶16; ECF No. 7-2 at pgs. 1-5 of 34.
[45] ECF No. 7 at ¶¶31 and 34.a.

*See Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Amer.*, 2020 WL 5240218 at *2-3 (M.D.Fla., Sept. 2, 2020) (dismissing breach of contract and declaratory relief claims where policy excluded loss caused because of a virus); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co. of Conn.*, 2020 WL 5938689 at *2, 5 (C.D.Cal., Oct. 2, 2020) (identical virus exclusion barred coverage); *Wilson v. Hartford Casualty Co.*, 2020 WL 5820800 at *7 (E.D.Pa., Sept. 30, 2020) (applying virus exclusion to bar coverage); *Franklin EWC, Inc. v. Hartford Financial Services Group, Inc.*, 2020 WL 5642483 at *1-3 (N.D.Cal., Sept. 22, 2020) (virus exclusion barred coverage for salon's claim based on COVID-19 non-essential business closure orders issued to stem the spread of the virus); *Diesel Barbershop* at *6-7 (finding that policy's virus exclusion would still bar coverage if plaintiffs properly plead direct physical loss to their properties).

Virus is not a covered cause of loss under this Policy. Loss or damage caused by or resulting from any virus is expressly excluded by this Policy. There is no dispute that COVID-19 is a virus. There is no dispute that Bauer's alleged losses caused by COVID-19 fall within the Policy's virus exclusion. The Policy's virus exclusion is unambiguous. It applies to all coverage under all forms and endorsements, subject to three exceptions that do not apply to this claim. The virus exclusion bars Bauer's claim for Business Income, Extra Expense, and Civil Authority Coverage. Because the virus exclusion bars all coverage for the claim, Bauer has no plausible action for declaratory judgment. Any further amendment by Bauer to the Amended Complaint would be futile. *See Mauricio Martinez, DMD, P.A.* at *3; *Infinity Exhibits* at *5.

**F.    The Policy's Consequential Losses exclusion bars coverage for the claim.**

The Policy's Consequential Losses exclusion bars coverage for the claim. That exclusion bars coverage for loss or damage caused by or resulting from consequential losses, delay, loss of

use or loss of market. "The most common form of consequential damages is lost profits." *Hardwick Properties, Inc. v. Newbern*, 711 So.2d 35, 40 (Fla. 1st DCA 1998); *see also, Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987). Two Florida federal decisions have applied the consequential losses exclusion to bar claims by insureds. *See Dictiomatic, Inc. v. U.S. Fid. & Guar. Co.*, 958 F.Supp. 594, 604-05 (S.D.Fla. 1997) (consequential loss exclusion barred coverage for insured's potential consequential losses associated with failure to produce and sell products not in existence at time of hurricane); *Bartram, LLC v. Landmark American Ins. Co.*, 864 F.Supp.2d 1229, 1238-40 (N.D.Fla. 2012) (insured's claim for lost rents, loan expenses, and diminution of value were consequential losses excluded under builder's all risk policies).

Two other decisions discuss the exclusion in the context of COVID-19 claims. *See Harvest Moon Distributors, LLC v. Southern-Owners Ins. Co.*, 2020 WL 6018918 at *6 (M.D.Fla., Oct. 9, 2020) (dismissal without prejudice where Plaintiff experienced "loss of use" of its product, which the Policy expressly excludes from coverage); *see also, Mudpie*, 2020 WL 5525171 at *6 (separate loss of use provision suggests that the "direct physical loss of … property" clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force).

Here, Bauer pleads what amounts to a consequential loss claim caused by and resulting from the Order. But the Policy specifically bars coverage for any consequential loss or loss of use claim caused by and resulting from the Order.

### G.     The Policy's Acts Or Decisions exclusion bars coverage for the claim.

The Policy's Acts Or Decisions exclusion bars coverage for the claim. The exclusion bars coverage for loss or damage caused by or resulting from acts or decisions of any person, group, organization or governmental body. This exclusion has been applied to bar coverage for claims

before COVID-19. *See Cytopath Biopsy Laboratory, Inc. v. U.S. Fidelity & Guaranty Co.*, 6 A.D.3d 300, 301 (N.Y. 1st Dept. 2004) (affirming summary judgment for insurer where authorities refused to permit resumption of operations); *Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*, 2014 WL 1041831 at *7 (S.D.N.Y., March 18, 2014) (partial summary judgment for insurer and applying exclusion to bar coverage for preemptive decision to shut down power for a few hours before Superstorm Sandy's waters damaged the power network); *Stephens v. Liberty Mutual*, 2008 WL 480287 at *20 (N.D.Cal., Feb. 19, 2008) (discussing that the exclusion logically includes "acts or decisions" of third parties). One decision from Florida's Middle District applied the exclusion to dismiss an insured's COVID-19 claim without prejudice. *See Harvest Moon Distributors*, 2020 WL 6018918 at *6 (discussing that loss arose from Disney's act of refusing beer product and complaint stated that plaintiff experienced "loss of use" of its product, which the Policy expressly excludes from coverage).

The Policy bars coverage for any loss or damage caused by or resulting from the acts or decisions by Governor DeSantis or any governmental body in response to the threat of COVID-19 spreading from person to person. The Policy's exclusion also applies to acts or decisions made by Bauer's owners in response to the threat of COVID-19 spreading from person to person.

WHEREFORE, Defendant Ohio Security Insurance Company respectfully requests that this Court enter an Order granting a final judgment on the pleadings in its favor, and dismiss Bauer's Amended Complaint with prejudice.

BUTLER WEIHMULLER KATZ CRAIG LLP

s/ Hudson Jones
J. PABLO CÁCERES, ESQ.
Florida Bar No.:  131229
pcaceres@butler.legal
HUDSON JONES, ESQ.
Florida Bar No.:  44290
hjones@butler.legal
Secondary:     jfan@butler.legal; ssamsing@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:     (813) 281-1900
Facsimile:     (813) 281-0900
Attorneys for Defendant Ohio Security Insurance
Company

## CERTIFICATE OF SERVICE

I certify that on November 6, 2020, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will send a Notice of Electronic Filing to the following:

Gilberto Sanchez, Esq.
Sabrina Franco, Esq.
Black Rock Trial Lawyers, PLLC
201 South Westland Avenue
Tampa, FL  33606-1743
gil@blackrocklaw.com
Secondary:  sabrina@blackrocklaw.com
Attorneys For:  Plaintiff

s/ Hudson Jones
HUDSON JONES, ESQ.